**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:21-cv-23942-JAL

ALFREDO CARLOS POTT,

    Petitioner,

v.

WORLD CAPITAL PROPERTIES LTD.,
*et al.*,

    Respondents.
_____/

**REPORT AND RECOMMENDATIONS**

    **THIS CAUSE** is before the Court upon Petitioner's Amended Application of Alfredo Carlos Pott for Recognition and Enforcement of Foreign Arbitral Award (ECF No. 20) and Respondent Gonzalo López Jordán's Motion to Dismiss and Opposition Under Article V to Application for Recognition and Enforcement of Foreign Arbitral Award (ECF No. 97). Petitioner filed a Reply in Support of Application and Response to Motion to Dismiss (ECF No. 110), to which Respondent filed a Reply (ECF No. 118). The matter has been referred to the undersigned United States Magistrate Judge by the Honorable Joan A. Lenard, United States District Judge, for disposition. (ECF No. 121). A hearing was held on the Application and Motion on March 11, 2024. (ECF No. 132). Having considered the Application, the Motion, Response, Reply, the record, the argument advanced at the hearing, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that the Amended Application be **GRANTED** and the Motion to Dismiss be **DENIED** for the reasons that follow.

1

I.  BACKGROUND

In the instant action, Petitioner seeks recognition and enforcement of an arbitral award issued by the International Chamber of Commerce ("ICC") in Argentina on March 19, 2021 against Respondents World Capital Properties, Ltd. ("WCP"), Santiago Steed ("Steed"), and Gonzalo López Jordán ("López Jordán" or "Respondent").  Default Final Judgment has been entered against Respondents WCP and Steed in this case.  (ECF Nos. 12, 128).  Before the undersigned, Respondent López Jordán moves to dismiss Petitioner's application for the recognition and enforcement of the award against him.

The underlying arbitration was commenced by Petitioner regarding a Stock Option Agreement (the "Agreement" or "SOA").  The Agreement was entered into by Petitioner and WCP on August 11, 2010.  The Agreement provided that if WCP transferred its shares of Argentine company Bentonicos de Argentina S.A. ("BDA") to a third party, Petitioner would "be entitled to receive a commission equal to 30% of the amount resulting from subtracting the amount of United States Dollars three hundred thousand (US$300,000) from the amount received by WCP for transferring the shares."  (ECF No. 20-1 at ¶ 2.1).  In the event of a dispute, the Agreement contains an arbitration clause that provides:

> 4.2 Any controversy or claim arising out of or related to this Agreement shall be solely and finally settled by an arbitration panel acting in accordance with the International Chamber of Commerce rules of arbitration, in accordance with the regulations in force of arbitrations of law, which the Parties accept.
>
> 4.3 The Parties agree that the award of the arbitration panel shall be the sole and exclusive remedy between them regarding any claims, counterclaims, issues or accountings presented to the arbitrators, irrespective of the magnitude thereof.
>
> 4.4 All arbitration proceedings shall be conducted in Spanish language.  The place of the arbitration shall be Buenos Aires, Argentina.  The Parties agree to facilitate the arbitration by (i) making available to each other and to the arbitrators for inspection and extraction all documents, books, records and personnel under their control as the arbitrators shall determine to be relevant to the dispute; (ii) conducting arbitration hearings to the greatest extent possible on successive,

> contiguous days; and (iii) observing strictly the time periods established by the arbitrators for the submission of evidence and briefs.
>
> 4.5 Any decision or award of the arbitration tribunal shall be final and binding upon the Parties to the arbitration proceeding.  The Parties hereby waive to the fullest extent permitted by law any rights to appeal or to review such award by any court or tribunal, except for their right to request the annulment of such award based on such award being granted on matters not subject to arbitration.  The Parties agree that the arbitration award may be enforced against the Parties to the arbitration proceeding or their assets wherever they may be found.  Enforcement of the arbitration award may be entered in any court having jurisdiction over the Parties or their assets.

(ECF No. 20-1 at ¶¶ 4.2–4.5).  Pursuant to the Agreement, the Parties' rights and obligations were governed by the substantive law of Argentina.  (ECF No. 20-1 at ¶ 4.1).

Prior to commencing the underlying arbitration, Petitioner filed a criminal complaint before the National Court of First Instance in Criminal Matters in Argentina, on March 31, 2011.  On September 29, 2011, the action was dismissed.  (ECF No. 20-3 at 160).

On November 21, 2014, Petitioner filed a Request for Arbitration in the International Court of Arbitration of the ICC, alleging that several Parties, including Respondents herein, breached the Agreement.  (ECF No. 20-5 at 157).  The arbitration subsequently commenced on December 4, 2014 against Respondents and was conducted pursuant to the Arbitration Rules of the ICC.  On March 12, 2015, the ICC appointed a three-person arbitral tribunal.  Respondents López Jordán and Steed objected to the jurisdiction of the arbitral tribunal.  On December 4, 2015, Respondents López Jordán and Steed signed the Terms of Reference[1] through their representatives.  (ECF No. 20-3 at 139).  The arbitral tribunal bifurcated the proceedings and first considered jurisdictional objections.  On October 23, 2016, the arbitral tribunal issued a partial award on jurisdiction finding in relevant part that it had jurisdiction to consider Petitioner's claims against Respondent.

---

[1] Under ICC Rules, the "Terms of Reference" is a document prepared by the panel that, among other things, summarizes the claims and relief sought by each party and a list of issues to be determined.  *See* ICC Rules Art. 23; *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 239 (S.D.N.Y. 2023).

On March 19, 2021, following a two-day hearing, the Arbitral Tribunal rendered its Final Award. (ECF No. 20 at ¶ 16); (ECF No. 20-5). The Final Award states,

> 3. World Capital Properties Ltd. is declared in breach of Clause 2.1 of the SOA.
> 4. It is declared that Gonzalo López Jordán and Santiago Steed controlled World Capital Properties Ltd. during the relevant dates of the sale-purchase transaction and subsequent sale of BDA's shares by World Capital Properties Ltd. to Acqua Holdings LLC.
> 5. The activity carried out by Respondents Gonzalo López Jordán and Santiago Steed as controlling parties of World Capital Properties Ltd., evidenced the intention to frustrate the rights of Alfredo Carlos Pott under the SOA, and claim an unlawful personal benefit that the Tribunal undoubtedly qualifies as willful misconduct. Consequently, the Tribunal declares that Gonzalo López Jordán and Santiago Steed are joint and severally liable together with World Capital Properties Ltd. for the damages caused to Alfredo Carlos Pott for the breach of their obligations under the SOA, pursuant to section 54 of the LCC.
> 6. It is determined that the damage to property caused to Alfredo Carlos Pott by the breach amounts to USD 8,850,000 as of December 30, 2010. Upon the update adjustment due to interest as of February 28, 2021, this amount reaches USD 19,154,055. Consequently, World Capital Properties Ltd., Gonzalo López Jordán and Santiago Steed are joint and severally ordered to pay Alfredo Carlos Pott the sum of USD 19,154,055.
> . . . .
> 8. World Capital Properties Ltd., Gonzalo López Jordán and Santiago Steed are joint and severally ordered to pay Alfredo Carlos Pott the arbitration expenses established by the International Arbitration Court in the amount of USD 670,000 and, in addition, the Claimant's costs in the amount of USD 1,542,889.27 dollars. That is, a total of USD 2,212,889.27.
> 9. The amounts which World Capital Properties Ltd., Gonzalo López Jordán and Santiago Steed have been joint and severally ordered to pay Alfredo Carlos Pott (items 6 and 8 above) must be paid within 30 (thirty) calendar days following the date on which this Final Award is notified.
> 10. In the event that the total amount of the judgment is not covered within the term of 30 (thirty) calendar days, then the total amount will accrue interest until the effective payment date, at a simple interest rate of 10% (ten percent) on an annual basis.

(ECF No. 20-5 at 291–92). Petitioner now seeks recognition and enforcement of this award and Respondent López Jordán moves to dismiss Petitioner's application.

4

## II. LEGAL STANDARD

The Parties do not meaningfully dispute that the arbitration at issue here is governed by the Inter-American Convention on International Commercial Arbitration[2] (opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245) (referred to interchangeably as the "Panama Convention," the "Inter-American Convention," and the "Convention"). *See* 9 U.S.C. §§ 301–307 (implementing the Convention). With respect to enforcement matters and interpretation, the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970), and the Inter-American Convention are substantially identical, and the case law interpreting provisions of the New York Convention is largely applicable to the Inter-American Convention. *Guarino v. Productos Roche S.A.*, 839 F. App'x 334, 337 (11th Cir. 2020).

"Because the Final Arbitration Award was made in a nation that is a signatory of the Inter-American Convention, the Final Arbitration Award is entitled to be recognized and enforced, unless an appropriate exception for non-recognition applies." *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1372 (S.D. Fla. 2003) (citing 9 U.S.C. § 304). "In 9 U.S.C. § 301, section 207 of the FAA is incorporated by reference and applied to Panama Convention awards." *Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.*, 670 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009). Section 207 provides that confirmation of an arbitral award falling under the Convention is mandatory "unless [a court] finds one of the grounds for refusal or deferral

---

[2] At the hearing, Respondent disputed that the Convention applied to the instant proceedings at all given that he is not a signatory to the underlying Agreement at issue. However, Respondent did not dispute that the caselaw interpreting provisions of the New York Convention are largely applicable to the Inter-American Convention and vice versa. *See Productos Roche S.A. v. Iutum Servs. Corp.*, No. 20-20059-CIV, 2020 WL 1821385, at *1 (S.D. Fla. Apr. 10, 2020), *aff'd sub nom. Guarino v. Productos Roche S.A.*, 839 F. App'x 334 (11th Cir. 2020).

of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "A district court's review of a foreign arbitration award is quite circumscribed" and "there is a general pro-enforcement bias manifested in the Convention." *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1366, 1367 (S.D. Fla. 2009) (quotations and alterations omitted).

"Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.*

In an action to confirm a foreign arbitral award, the initial burden is on the party applying for recognition to establish jurisdiction by supplying: (1) "[t]he duly authenticated original award or a duly certified copy thereof"; and (2) the original written agreement to arbitrate (or duly certified copy). *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1291 (11th Cir. 2004). "Once the proponent of the award meets his article IV jurisdictional burden of providing a certified copy of the award and the arbitration agreement, he establishes a prima facie case for confirmation of the award." *Id.* at 1292 n.3. "That is, the award is presumed to be confirmable." *Id.* "The defendant to the confirmation action can overcome this presumption only by making one of the showings enumerated in the Convention." *Id.* Under Article V of the Convention, there are seven enumerated showings:

> 1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested:
>> a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the

6

> parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or
>
> b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or
>
> c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or
>
> d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or
>
> e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.
>
> 2. The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:
>
> a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or
>
> b. That the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

Convention, art. V. "When reviewing an arbitration award, '[c]onfirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm.'" *Chelsea Football Club Ltd. v. Mutu*, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)).

## III. DISCUSSION

### A. Question of Arbitrability

Respondent argues that the arbitration award cannot be confirmed in this case because Respondent did not consent to the arbitration. Respondent asserts that he is a non-signatory to the Agreement and, as such, is not subject to the arbitration clause, nor consented to the adjudication

7

of his rights and interests by arbitration. Respondent asserts that, as a non-signatory, the arbitral tribunal did not have jurisdiction over him and the final award cannot now be enforced against him. In his Motion and at the hearing, Respondent asserts this argument is applicable for nearly all of the seven enumerated defenses provided by the Convention against confirmation of the arbitral award.

Petitioner asserts that Respondent consented to the ICC's jurisdiction to determine the arbitrability of Petitioner's claims by signing the Terms of Reference, and is bound by that agreement. Petitioner argues that, as with Respondent's consent to the ICC's jurisdiction, Respondent raises the same challenges to jurisdiction in this action as he did before the ICC and, as such, this Court owes deference to the ICC's determination.

The burden of proving an exception falls on the party opposing confirmation. *See Czarina, L.L.C.*, 358 F.3d at 1292 n.3; *CBS Corp. v. WAK Orient Power & Light Ltd.*, 168 F. Supp. 2d 403, 410 (E.D. Pa. 2001). Article V of the Convention states, "recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested [one of the exceptions to recognition applies]." Convention, art. V.; *See CBS Corp.*, 168 F. Supp. 2d at 410.

"Although courts, not arbitrators, ordinarily decide whether a dispute is arbitrable, the parties can choose to have arbitrators resolve the question of arbitrability, so long as that intention is evidenced by clear and unmistakable evidence." *Earth Sci. Tech, Inc. v. Impact UA, Inc.*, 809 F. App'x 600, 605–06 (11th Cir. 2020); *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 33–34 (2014). "[A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

In an arbitration with the ICC, the Terms of Reference can include "a list of issues to be determined" by the panel. *See* ICC Rules Art. 23; *CBF Industria De Gusa S/A*, 650 F. Supp. 3d at 239; *CBS Corp.*, 168 F. Supp. 2d at 411. Here, the Parties submitted a Terms of Reference to the ICC that provided such a list. Specifically, Respondent López Jordán submitted, in relevant part, the following to the tribunal:

> Without prejudice to the fact that López Jordán refers to the existence of all the litigious matters raised in his Answer to the Request for Arbitration, by way of example and not exclusively, the following litigious points are stated:
> a. Inexistence of an arbitration agreement with respect to López Jordán, allowing the arbitral jurisdiction. Inapplicability of the theory of "piercing the corporate veil" with respect to López Jordán. The Claimant's claim concerns matters alien to the SOA and the scope of application of the arbitration agreement provided therein. López Jordán requests that this litigious point be resolved as a matter of prior and special ruling.
> b. Plaintiff's action barred by the statutes of limitation. López Jordán requests that this litigious point be resolved as a matter of prior and special ruling.
> c. Scope of López Jordán's actions as agent in the execution and performance of the Loan Agreement. . . .

(ECF No. 110-2 at 70). The Terms of Reference further provided that the jurisdiction of the arbitral tribunal "to resolve certain points of litigation offered by López Jordán, Steed and Patagonia is subject to the decision made by the Arbitral Tribunal on: the (i) lack of jurisdiction, and (ii) lack of representation of World Capital." (*Id.* at 74).

Respondent López Jordán, through counsel on his behalf, signed the Terms of Reference. (*Id.* at 77). Respondent submitted specific claims and defenses for the tribunal's consideration for a "prior and special ruling." (*Id.* at 70). Despite Respondent's claim to the contrary, the record of the arbitration proceedings shows unmistakably that, by signing the Terms of Reference, Respondent agreed to submit to arbitration the question of arbitrability. Thus, the undersigned must defer to the tribunal's decision that Petitioner's claims against Respondent were arbitrable. *See Earth Sci. Tech, Inc.*, 809 F. App'x at 606.

9

In rejecting Respondent's appeal, the Argentine Court of Appeals in Commercial Matters likewise found that Respondent's acquiescence to the Terms of Reference implied his consent to the arbitration's decision of arbitrability of the claim, and noted that "if [Respondents] proposed that it be decided whether the Arbitral Tribunal had jurisdiction over them, such proceeding implied their voluntary submission to the result of the decision." (ECF No. 4-3 at 24). If, by contrast, he had declined to sign the Terms of Reference, he would have thereby maintained his opposition to consenting; "A conduct coherent with the position which the [Respondents] intend to assume, would have advised to straightly raise their opposition to being included in the arbitration and *not to sign the Terms of Reference*, as, according to their point of view, they were not related to [Petitioner] by the contract giving rise to the arbitration proceeding." (*Id.*) (emphasis added).

Despite signing the Terms of Reference, Respondent asserts that his acquiescence to the Terms of Reference was a result of coercion. Respondent cites to instances in the arbitration record where Respondent objected to jurisdiction before signing the Terms of Reference. *See* (ECF No. 20-3 at 129) ("[T]he Respondents stated that they did not validate or consent to the jurisdiction of the Arbitral Tribunal due to the fact that they considered that there was no arbitration agreement that binds or had bound López Jordán, Steed and / or Patagonia with the Claimant."). At the hearing before the undersigned, Respondent's counsel clarified that his claim of coercion was based on counsel's reading of the arbitration record. Despite counsel's characterization of the proceedings as coercive, the record reveals no such coercion.

Rather, the record reveals Respondent's participation in the proceedings and even demand for relief in the form of favorable findings. As noted above, the Terms of Reference specifically note what issues Respondent submitted for consideration by the tribunal. As part of his defense to

10

jurisdiction, Respondent submitted to the tribunal that he did not participate in any agreement with Petitioner, nor consent to participation in the arbitration. (ECF No. 110-2 at 68). Respondent further submitted to the tribunal that the doctrine of piercing the corporate veil was not applicable to Respondent. (*Id.*). Respondent further requested affirmative relief from the tribunal, including requesting findings that Respondent was not party to an arbitration agreement, piercing of the corporate veil was inapplicable, and that Petitioner's action was barred by the statute of limitations. (*Id.* at 70).

Respondent argues that, if he did not consent to jurisdiction, he would have been the subject of a default judgment, further supporting his contention that he was coerced into consenting. If a party refuses to sign the Terms of Reference, the Rules of the ICC require that the Terms of Reference then be submitted to the court for approval. *See* ICC Rules Art. 23(3) ("If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall be submitted to the Court for approval. When the Terms of Reference have been signed in accordance with Article 23(2) or approved by the Court, the arbitration shall proceed."). Relevant here, WCP did not sign the Terms of Reference. As a result, the arbitration record reflects that the Terms of Reference were submitted to the International Court of Arbitration for approval, which was subsequently obtained. (ECF No. 20-3 at 121, 143) ("[T]he Terms of Reference signed by Claimant and the other Respondents were sent to the Secretariat of the International Arbitration Court with the purpose of obtaining its approval under the terms of the provisions of Section 23 (3) of the Rules of Arbitration."). While Respondent contends he would have been subject to a default judgment if he did not acquiesce, this contention is belied by the arbitration record. WCP did not sign the Terms of Reference, and the Parties do not dispute that the tribunal did not enter

default judgment against WCP. Accordingly, Respondent's argument that he was coerced into consenting under threat of default is unavailing.

Moreover, Respondent first raises his assertion of coercion in his Reply. Arguments first raised in a reply need not be considered by the Court. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'"); *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281, 1297 (S.D. Fla. 2021) (applying same in district court motion practice).

### B. Respondent as a Non-signatory to the Agreement

Respondent argues that, as a non-signatory to the Agreement, the arbitration clause cannot be a source of jurisdiction for the arbitral tribunal. Respondent advances this argument to support most of the enumerated defenses under the Convention against confirmation of the arbitral award. Respondent further argues that the ICC improperly pierced the corporate veil to assess Respondent's liability in contravention of Argentine law.

Petitioner argues that this Court is not permitted to reexamine the tribunal's determination of its jurisdiction. Petitioner asserts that, even if the Court were permitted to do so, the tribunal properly applied Argentine law in finding Respondent liable under an alter ego theory and in piercing the corporate veil. Petitioner asserts that these legal doctrines parallel that of the legal doctrines found in United States law.

As Petitioner notes, "if the parties assign arbitrability to the arbiter, 'a court must defer to' that arbiter's decision on that issue." *Earth Sci. Tech, Inc.*, 809 F. App'x at 604 (quoting *First Options of Chi., Inc.*, 514 U.S. at 943). As noted above, the Parties here have by clear and

unmistakable evidence consented to the determination of arbitrability to the arbitral tribunal; thus, this Court must defer to the tribunal's decision.

Moreover, while it is true that the Agreement at issue is between Petitioner and WCP, that Agreement provides that any conflicts are to be resolved pursuant to Argentine law. The tribunal noted that Section 54 of Argentina's Law of Commercial Companies No. 19,550 ("Section 54 of the LCC") provides:

> [T]he effects of a contract entered into by a company may be attributed to the subjects controlling such company. Such attribution to controlling persons extends to all contractual obligations, including the arbitration clause. The piercing of the corporate veil does not render the obligations assumed by the company arising from the contract ineffective, but rather extends them to members and controlling parties under certain circumstances.

(ECF No. 20-3 at 216). In its Partial Award, the tribunal found that, in the absence of any contrary evidence and in reserving ruling on the merits, Petitioner had demonstrated that the doctrine of corporate veil piercing rendered the arbitration clause binding on non-signatory third parties, such as Respondent. (*Id.* at 225–26). In the Final Award, the tribunal found that López Jordán and Steed controlled WCP during the relevant dates of the sale-purchase transaction and subsequent sale of BDA's shares by WCP, and that López Jordán and Steed were jointly and severally liable with WCP for the damages caused to Petitioner due to the breach of the Agreement, pursuant to Section 54 of the LCC. (ECF No. 20-5 at 292). Here, the tribunal found the LCC personally bound Respondent to the arbitration clause in the Agreement under Argentine law.

### C. Prior Criminal Case

Prior to commencing the underlying arbitration, Petitioner filed a criminal complaint before the National Court of First Instance in Criminal Matters in Argentina, on March 31, 2011. On September 29, 2011, the action was dismissed. (ECF No. 20-3 at 160).

13

Respondent argues that res judicata barred the arbitral tribunal from re-opening the facts and attributing liability on findings contrary to the prior rulings of the Argentine criminal courts. Respondent asserted at the hearing that the tribunal disregarded, without addressing, Respondent's res judicata defense.

Contrary to Respondent's contention, the tribunal did address Respondent's res judicata argument and found that it was not meritorious. The Argentine criminal court had noted in its acquittal of Respondent that "the conflict raised between the parties is alien to the sphere of criminal law," and "therefore the controversy should be channeled through the corresponding private law." (ECF No. 20-5 at 202). As a result, the Tribunal found that "the main argument that decides the dismissal of the res judicata defense is found in the decision of dismissal itself, since it was based on the fact that the criminal offense did not occur because of absence of criminal type. The court did not render the acquittal due to the fact that the crime was not committed by the [Respondent] . . . [Instead], the fact under investigation has no criminal relevance and does not constitute a crime." (*Id.* at 203) (citations omitted). Because the record definitively shows otherwise, Respondent is not entitled to relief on this claimed defense.

### D. Due Process

Respondent urges this Court to deny recognition and enforcement of the award because he was unable to present his case and evidence during the arbitration, in violation of due process. Petitioner asserts that Respondent has failed to meet his heavy burden that his due process rights were violated.

Article V(1)(b) of the Convention provides a defense against enforcement of a foreign arbitration award where "the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was

unable, for any other reason, to present his defense." Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 975 (2d Cir. 1974); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 499 (5th Cir. 2020); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298 (5th Cir. 2004). "In the United States, those minimum procedural safeguards are 'adequate notice, a hearing on the evidence, and an impartial decision.'" *OJSC Ukrnafta*, 957 F.3d at 499.

Respondent does not contend that he received inadequate notice or was otherwise prevented from participating in the proceedings. Rather, he argues that he was unable to present his case within the meaning of Article V(1)(b) because Respondent did not have an opportunity to cross-examine the statements submitted to the tribunal by witness Luca Sarti Magi ("Sarti Magi"), an asserted representative of WCP. Respondent asserts that these statements were the linchpin evidence used to find Respondent's control over WCP in the Partial Award, and thus in finding Respondent subject to the tribunal's jurisdiction.

Upon review of the Partial Award, the Court finds no basis to substantiate this objection. At the hearing, Respondent asserted that the tribunal's reliance on Sarti Magi's statement could be equated to counsel showing up to Chambers on Sunday afternoon to discuss the case with the undersigned, *ex parte*. The record shows otherwise. As noted at the hearing, the Partial Award memorializes that, on August 11, 2015, Sarti Magi "appeared, assisted by his lawyer Alessandro Masetti Zannini de Concina from the city of Rome, Italy, and made certain statements," including that his relationship with WCP "was to act as frontman for Mr. Gonzalo López Jordán and always following his instructions, due to the friendship that united us." (ECF No. 20-3 at 134) (emphasis omitted). The Award then notes that Mr. Raul Aguirre Saravia, an attorney for WCP, had

"question[ed] the statements made by Mr. Luca Sarti Magi." (*Id.*).  Respondent relies on the award itself as proof of the due process violation about which he complains, and it fails to reveal the irregularities argued by counsel.

Moreover, the arbitration record reveals Respondent's significant participation in the proceedings.  *See* (*id.* at 134) ("On August 3, 2015, Messrs. Steed and López Jordán, on their own behalf and on behalf of Patagonia Financial Holding LLC, requested the Arbitral Tribunal an extension of the term to hold the conference, while appointing new legal representatives in the arbitration.").  Indeed, the arbitration record reflects that Respondent presented arguments to the tribunal regarding the falsity of Sarti Magi's statements.  *See* (*id.* at 179) ("[I]n response to the statements made by Sarti Magi in the communication sent on August 1, 2015 stating that he acted as his front man and always following instructions, López Jordán pointed out that they are false and contradict the own acts of Sarti Magi (quoting and Annexes 13, 16 and 21 that he attached to his Plea on Jurisdiction), therefore, in accordance with the *doctrina de los propios actos* (Estoppel) and good faith, he cannot attempt to ignore what was acted at the time by WCP, with respect to which he was its director and only owner.").  And the tribunal subsequently considered Respondent's assertions in the Preliminary Award.  *See* (*id.* at 218) ("Despite the statements of Respondents No. 4 [López Jordán] and 5 that it is Sarti Magi who is the WCP's shareholder, owner and ultimate controlling party, Claimant presented evidence to prove that even after the subscription of the Related Contracts Respondents No. 4 and 5 requested CTL to modify certain records pre-dating them to December 5, 2006.").

Contrary to Respondent's assertion, the Partial Award further explains that Petitioner submitted evidence, beyond Sarti Magi's statement, in support of the finding that Respondent

controlled WCP, *see* (ECF No. 20-3 at 217–24); and that evidence, in addition to the statement, was relied on by the tribunal in rendering the Partial Award. *See* (ECF No. 20-3 at 229–32).

Respondent additionally faults the panel for requiring *him* to produce certain non-party individuals, including Sarti Magi, for questioning during arbitral hearing; he argues he was prevented from presenting his defense when these individuals did not appear. This does not state a due process claim because the "inability to produce one's witnesses before an arbitral tribunal is a risk inherent in an agreement to submit to arbitration. By agreeing to submit disputes to arbitration, a party relinquishes his courtroom rights— including that to subpoena witnesses— in favor of arbitration with all of its well known advantages and drawbacks." *Parsons & Whittemore Overseas Co.*, 508 F.2d at 975.

Accordingly, the Court finds that Respondent has not met his burden of proving that Article V(1)(b) provides a valid defense against enforcement of the Award.

### E.     Finality

Respondent asserts in his Motion that he and Steed have petitioned for extraordinary relief to the Argentine courts to reconsider the Preliminary Award issued by the arbitral tribunal. Respondent argues this is a basis for denying Petitioner's application to confirm the Final Award. Since filing his Motion, however, the Argentine Supreme Court denied Respondent's final petition for extraordinary relief on October 3, 2023. *See* (ECF No. 122). As such, the Partial Award and Final Award are both final, and Respondent has exhausted his avenues of appeal.[3]

---

[3] Notably, Petitioner represents that Respondent solely appealed the tribunal's Preliminary Award, and did not challenge the Final Award, which became final and binding 30 days after its issue; a contention unrebutted by Respondent. *See* (ECF No. 110 at 26).

## IV.     RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Petitioner's Amended Application of Alfredo Carlos Pott for Recognition and Enforcement of Foreign Arbitral Award (ECF No. 20) be **GRANTED**; and Respondent's Motion to Dismiss and Opposition Under Article V to Application for Recognition and Enforcement of Foreign Arbitral Award (ECF No. 97) be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, on this 19th day of March, 2024.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Joan A. Lenard
Counsel of Record