## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ALFREDO CARLOS POTT,          Case No. 21-23942-CIV-LENARD

       Petitioner,

v.

WORLD CAPITAL PROPERTIES LTD., et al.

      Respondents.            /

## PETITIONER'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS
## BY GONZALO G. MARTINEZ

Petitioner Alfredo Carlos Pott respectfully moves, pursuant to Fed.R.Civ.P. 37 and L.R. 26.1, to compel subpoena recipient Gonzalo G. Martinez to produce documents responsive to categories 8, 9, 10, and 15 of the subpoena served upon Mr. Martinez. Because this motion includes some information from documents designated as confidential under a confidentiality stipulation, leave is being sought to file this motion under seal, and the confidential information has been redacted from the publicly-filed copy of this motion pursuant to L.R. 5.4(b)(1).

## MEMORANDUM OF LAW

### Background

Following entry of judgment in his favor, Mr. Pott is engaging in discovery in aid of execution. As part of that effort, he served a subpoena on non-party Gonzalo G. Martinez, who serves as trustee of two trusts connected with judgment debtor Gonzalo Lopez Jordan. Mr. Martinez served his Supplemental Response and Objections to Plaintiff's Subpoena on June 28, 2025, and in light of ongoing discussions the parties stipulated to a seven-day extension for bringing this motion pursuant to L.R. 26.1(g)(2)(C).[1] Copies of the subpoena

---

[1]    Mr. Martinez's principal document production pursuant to the Supplemental Response was made on July 17, 2025. Mr. Pott is currently analyzing whether any issues may exist with the *content* of that production, and would address any such issues, should they exist, within the timeframe permitted by L.R. 26.1(g)(2)(A)(iii).

and of the Supplemental Response are attached as Exhibits A and B, respectively.  A letter confirming the parties' discussions with respect to the Supplemental Response is attached as Exhibit C.

The documents sought by this motion relate to two trusts tied to judgment debtor Lopez Jordan, and for which Mr. Martinez serves as trustee, the Aconcagua Trust and the Lopez Jordan Irrevocable Family Trust ("LJIF Trust").[2]  The Aconcagua Trust and part of its relationship to Lopez Jordan are discussed in the awards of the ICC arbitral tribunal whose Final Award was confirmed as a judgment of this Court.  (ECF 20-3, 20-5; see ECF 64 ¶¶ 4, 15, 45, 58 for additional information).  Information about the LJIF Trust emerged later (see, e.g., ECF 62 at 12, ECF 64 ¶ 15, 35, 44-45).  The two trusts fall within the subpoena's definition of "Related Trust" and, according to Mr. Martinez's counsel, are the *only* two trusts within the definition of "Related Trust" for which Mr. Martinez has any documents.

### The Requests at Issue

This motion is directed to four of the subpoena's requests for which Mr. Martinez has objected to producing responsive documents:

8.      All documents reflecting the assets held by any Related Trust at any point in time.

9.      All documents provided to or obtained by You in connection with Your beginning service as a trustee of any Related Trust.

10.      All documents reflecting any payments or other compensation to You in connection with Your service as a trustee of any Related Trust.

15.      All documents reflecting any action taken by you on behalf of a Related Trust in its capacity as shareholder, member, partner or other owner (in whole or in part) of a corporation, limited liability company, partnership, or other business entity during the period from January 1, 2019 to the present.

---

[2]      The trustee, Mr. Martinez, is also Mr. Lopez Jordan's brother-in-law.  (Exhibit D, Transcript of deposition of Mr. Lopez Jordan taken in aid of execution in *Araguaney, Ltd. v. Gonzalo Lopez Jordan, et al.,* Case No. 2017-016744-CA-01 (Eleventh Circuit, Miami-Dade County), and filed with the court in that case on December 3, 2023, at 13).

Mr. Martinez has objected to producing any documents responsive to requests 9, 10, and 15. Iin response to request 8, he has objected and referred to his response to request 6 (which agreed to produce documents "reflecting the acquisition by any Related Trust of real or personal property or any other asset", which Mr. Martinez's production to date has shown to be insufficient to reflect what property the trusts actually own, or have owned, during his tenure as trustee).

**Discussion**

### 1.    The Trustee's Generic Objections

Most of Mr. Martinez's objections are boilerplate objections that are presented without any explanation and are easily disposed of.  He objects to each request as "overly broad" and "unduly burdensome", without even attempting to meet his burden of supporting those conclusory claims.[3]  Similarly, his objection that requests 8-10 seek information from a non-party to the litigation is unfounded because both Fed.R.Civ.P. 69(a) and Fla.R.Civ.P. 1.560 (incorporated by Rule 69(a)) expressly authorize discovery from "any person", including non-parties, in aid of execution.  *See Trustees of N. Fla. Operating Engineers Health & Ins. Fund v. Lane Crane Serv., Inc.,* 148 F.R.D. 662, 663 (M.D. Fla. 1993).

Mr. Martinez's objections of overbreadth in the definition of "Related Trust" or the purported absence of a timeframe (*but see* Definition I, limiting the timeframe in question) are unfounded given the particular circumstances of the case.  As Mr. Martinez has acknowledged, there are in fact only two Related Trusts, both of which have been identified by name in Definition A.  The subpoena was worded more broadly just in case there were other trusts involving Mr. Lopez Jordan of which Mr. Pott was unaware, but – at least as far as Mr. Martinez is concerned – that is not the case.  As for timeframe, not only does the subpoena itself limit the timeframe in question to begin on the date on which the Aconcagua Trust was

---

[3]    Indeed, Mr. Martinez's entire production in response to the eleven uncontested categories of the subpoena amounts to ninety-eight pages, a number of which are blank "separator" pages.

formed (while Lopez Jordan was embroiled in disputes with Mr. Pott and other business counterparts); Mr. Martinez did not even become a trustee of the trusts until ███████████ ████████████████████████████████████████████████████████████████████ (See below).

And Mr. Martinez's assertion that the requests seek "confidential and potentially privileged information" is unsupported by any log of privileged documents or, indeed, even a broad explanation of which responsive documents are privileged, and the factual basis for the assertion of privilege.

## 2.      Discovery Concerning the Two Related Trusts

Mr. Martinez's objection that the request seeks information that is irrelevant or disproportionate to the needs of the case appears to be based on the fact that Mr. Pott is seeking records concerning Mr. Lopez Jordan's two related trusts, as opposed to being limited to the assets held by Lopez Jordan in his own name.  Yet, given the nature of the two trusts and their surrounding circumstances, this discovery in aid of execution is entirely appropriate.

Although "generally 'discovery in aid of execution cannot be used to pry into the assets and business of persons other than the judgment debtor,' … a nonparty may be subject to postjudgment discovery where the 'judgment creditor can provide a good reason and close link between the unrelated entity and the judgment debtor.'"  *2245 Venetian Court Bldg. 4, Inc. v. Harrison,* 149 So.3d 1176, 1179 (Fla. 2d DCA 2014) (*quoting Gen. Elec. Capital Corp. v. Nunziata,* 124 So.3d 940 (Fla. 2d DCA 2013)).  *See Waldrep v. Labmed Servs., LLC,* 2024 WL 1806335 at *2 (M.D. Fla. Apr. 25, 2024); *Hatala v. Sustainable Concepts Development, LLC,* 2022 WL 2341234 at **4-5 (S.D. Fla. Apr. 25, 2022); *In re Taylor, Bean & Whitaker Mortg. Corp.,* 620 B.R. 165, 168-69 (Bankr. M.D. Fla. 2019); *Trustees of N. Fla. Operating Engineers Health & Ins. Fund v. Lane Crane Serv., Inc.,* 148 F.R.D. 662, 664 (1993).

As the court explained in *In re Taylor, Bean,* "[t]he presumption is in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets

and otherwise to enforce its judgment."  620 B.R. at 168 (quoting *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.,* 286 F.R.D. 288, 291 (E.D. Va. 2012)).  The *Taylor, Bean* court also relied upon *Credit Lyonnais, S.A. v. SGC Intern., Inc.,* 160 F.3d 428 (8th Cir. 1988), where "the circuit court 'stressed that the presumption should be in favor of full discovery of any matters *arguably related* to [the judgment creditor's] efforts to trace [judgment debtor] assets and otherwise to enforce its judgment" (620 B.R. at 168-69) (emphasis in *Taylor, Bean*); and upon *Falicia v. Advanced Tenant Services, Inc.,* 235 F.R.D. 5 (D.D.C. 2006), where the plaintiffs were found to have "submitted evidence which suggests that [two non-parties] were mere extensions of [the judgment debtor], thereby raising *colorable suspicion* regarding the relationship between [the non-parties'] assets and [the judgment debtor]", and where the "suspicion raised by the evidence presented by the plaintiffs" provided a basis for discovery of the non-parties' bank records.  620 B.R. at 169 (emphasis in *Taylor Bean*).

**3.      The Close Links Between the Related Trusts and The Judgment Debtor**

In the past few years, Lopez Jordan has transitioned from being the founder and an apparent owner of a web of companies handling scores of millions of dollars in investments to an apparent employee of one of those companies, which company is claimed to be owned by the two Trusts.

Lopez Jordan has repeatedly held himself out in promotional materials as "Founder and Managing Partner of Patagonia Financial Holdings" ("**PFH**"), which was established in 2010.  (ECF Nos. 64 ¶¶ 8, 16; 64-7).  He explains that PFH "is a private equity firm, based in Miami, Florida.  At Patagonia we strive to find unique projects for which we have allocated **more than $1 billion in investments.**"  According to Lopez Jordan, "[o]ur affiliate, American Regional Center Group, specialized in structuring the immigration component to our projects.  **ARCG** has a 100% success rate in obtaining investment visas for our investors that range from a large spectrum from E-2s to EB-5."  (ECF No. 64 ¶¶ 8-10).  Although Lopez Jordan was also a

founder and owner of ARCG, today ARCG is owned by the two Trusts and he is an ARCG employee whose salary is determined by the trustee.  (Exhibit D, pp. 10-11, 38-39, 58).

Prior to January 2022, Lopez Jordan served as the manager of ARCG and of numerous companies tied to ARCG's business, including **Between Rivers, LLC**; **Banyan House Holdings, LLC**; PFH; and **Elevate Capital, LLC**.  (ECF Nos. 64 ¶¶ 10, 14, 16, 34, 48, 58; 64-6; 64-7; 64-22; 64-33; 64-46).  As of January and February 2022, he abruptly ceased serving in those roles, with the trustee Mr. Martinez (and, in most cases, Lopez Jordan's wife Samanta Martinez) replacing him as managers of the LLCs.  (*Id.*)[4]  These changes coincided with the conclusion of a trial and entry of a $1 million-plus judgment against Lopez Jordan in January and February 2022.[5]  Lopez Jordan currently claims to have no executable assets and to hold direct or indirect ownership interest only in a single, non-operating company, World Capital Investments, Inc.[6]

ARCG is not the only company whose ownership has changed from Lopez Jordan to the Trusts.  For example, as of March 30, 2017 PFH[7] was owned by Between Rivers, LLC (owned in turn by Lopez Jordan) and by **Sapphire Capital, LLC** (owned in turn by additional judgment debtor Santiago Steed), with small interests in the names of Messrs. Lopez Jordan and Steed individually.  By May 9, 2019, though, most of Between Rivers had been transferred to the LJIF Trust, and Mr. Steed's interest had come under the ownership of Aconcagua Trust (held through Banyan House Holdings, LLC).  (ECF Nos. 64 ¶¶ 44-46; 64-30 pp. 15-16; 64-

---

[4]     Although less clearly tied to ARCG's business operations, **Brickell Executive Management LLC** followed the same pattern of replacing Lopez Jordan as manager with the Trustee and with Lopez Jordan's wife in early 2022.  Nevertheless, despite no longer being listed as manager, Lopez Jordan continued to sign documents on behalf of that entity as a "Director" and as "authorized signer."  (ECF No. 64 ¶¶ 19-26 & n.1; 64-8 through 64-13).

[5]     See ECF 40-1, 40-2 (trial concluded January 20, 2022; findings of fact issued February 17, 2022; judgment entered February 18, 2022).

[6]     Exhibit D at 47-48.

[7]     PFH has served to hold interests in other companies from which Mr. Lopez Jordan has derived economic benefits.  (ECF No. 64 ¶¶ 17 et seq.)

31 p. 20).[8]  In 2021, Lopez Jordan "sold" to Aconcagua Trust additional interests in Between Rivers, LLC and Banyan House Holdings, LLC (Exhibit D, pp. 31-32).[9]

Lopez Jordan has testified that he transferred his 50% ownership interest in ARCG to LJIF Trust in 2014.  (Exhibit D, pp. 33-34).[10]  That chronology, however, is at odds with the Forms ADV filed with the SEC in 2017, which showed his holding company Between Rivers not being transferred to the LJIF Trust until sometime between March 30, 2017 and May 9, 2019.  (ECF Nos. 64-30 pp. 15-16; 64-31 p. 20).

Moreover, Lopez Jordan has received large sums of money for which he was inexplicably unable to account during his deposition.  (Exhibit D at, *e.g.,* 109 ($12,653.83), 110-12 ($50,000), 117-19 ($101,471 and $99,906), 121-22 ($30,000), 126-31 (in excess of $81,000), 135-36 ($116,833.82, which payment he acknowledges the trustee would have authorized), 142-43 ($50,000), 143-46 ($70,400), 153 ($101,087.27)).  At least one of those payments, a remote online deposit of $50,000 on February 28, 2022, ██████████████████ ████████████████████

### 3.      The Judgment Debtor's Control Over the Related Trusts

In addition to the factual circumstances raising colorable suspicions about the relationships between Mr. Lopez Jordan and the two Trusts, the provisions of the Trusts themselves raise questions about both their bona fides and Lopez Jordan's control over them.

---

[8]      **Brickell Executive Offices, LLC** (managed by the above-mentioned Brickell Executive Management LLC, see ECF No. 64 ¶ 9 & Exh. 8) has apparently come under the ownership of one or both trusts, as Mr. Lopez Jordan testified he was instructed by "the trustee" to engage in certain real estate transactions on its behalf.  (Exhibit D at 193-95).

[9]      In addition, Mr. Lopez Jordan has apparently disposed of his interests in a number of businesses that had been indirectly owned by Messrs. Lopez Jordan (and, in some cases, Steed) during the same timeframe.  (ECF No. 64 ¶¶ 37-46).  And ARCG itself, through its affiliates, appears to have interests in a number of investment-vehicle-related companies.  (ECF No. 64 ¶¶ 47-57).

[10]     Significantly, Pott's request for arbitration in the proceedings which gave rise to his judgment against Mr. Lopez Jordan was sent on November 21, 2014, shortly prior to the supposed transfer.  (ECF 20-3 ¶ 1).

[11]     ████████████████████████████████████████████████████

a) **Aconcagua Trust**

Aconcagua Trust was formed in 2011 by Lopez Jordan's mother as grantor, with his wife as the trustee.  (Exh. D at 44; Exhibit F).[12]  The grantor's initial contribution to the trust was ████████████████████  The trust was revocable, and the grantor served as trust protector, until she passed away in approximately 2018 (Exh. D at 45), at which point Lopez Jordan became the trust protector, with the rights (a) to remove and appoint trustees, (b) to receive fair and reasonable compensation, and (c) to make certain amendments to the trust.  (Exh. F, Ac. Trust Decl. Arts. I, XI(B)).  Given his right to remove the trustee, Lopez Jordan also exercised substantial indirect influence over the trustee's considerable and very broad discretionary powers.  (E.g., Ac. Trust Decl. Arts. V, XII, XIII).

Lopez Jordan testified that he did not remember how Mr. Martinez came to be trustee of the Aconcagua Trust, and did not remember whether he participated in the paperwork of the latter's appointment.  (Exh. D at 36-37).  ████████████████████ ████████████████████████████████████

Lopez Jordan served as trust protector until ████████████████████ ████████████████████████████████████ ██████████  On that date, he appointed "a trusted friend" in his place.  (Exh. D at 174-75)

Upon the grantor's death (and possibly earlier upon her incapacity as established by trustee or successor trustee), Lopez Jordan and his "descendents" became the beneficiary of the Aconcagua Trust.  (Ac. Trust Decl. Arts. II(B), III(B), V(A)).  ████████████ ████████████████████████████████████

---

[12]   Exhibit F consists of a Declaration of Mariano Pott dated August 1, 2025, attaching as Exhibit 1 the relevant trust declaration for Aconcagua Trust (hereinafter, "Ac. Trust Decl.").

[13]   ████████████████████████████████

[14]   ████████████████████████████████

[15]   ████████████████████████████

████████████████████████████████████████████████████

███████████████████

**b)**   **LJIF Trust**

Mr. Lopez Jordan is the grantor of the LJIF Trust.  (ECF 64 ¶ 35, ECF 64-20).   ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

16    ██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████

### 5.      The Requests

Given the murky circumstances surrounding the transfer of Lopez Jordan's assets into the Trusts, as well as his relationships thereto, the document requests seek to determine, at least to the extent the trustee has responsive documents, what assets the Trusts have purportedly held over time; what documents (information and instructions) the current trustee received in connection with beginning service; the extent to which compensation received by the trustee has been fair and reasonable as permitted under the documents, or excessive and serving as an additional means of Lopez Jordan's control over him; and the extent to which the trustee has actually been making active decisions on behalf of the companies held in the portfolio, as claimed in Lopez Jordan's deposition (Exh. D).

### Conclusion

For all of the foregoing reasons, Mr. Pott respectfully seeks an order compelling Mr. Martinez to produce all documents in his possession, custody, or control that are responsive to categories 8, 9, 10 and 15 of the subpoena.

**Certificate of Conference**

      I hereby certify that on July 9, 2025 I conferred by telephone with Pedro Jedlicka, Esq., counsel for Gonzalo G. Martinez, in an effort to resolve by agreement the issues raised by this motion, but was unable to do so.

                              /s/      C. Ryan Reetz

                        Respectfully submitted,

                        /s/      C. Ryan Reetz
                        **BRYAN CAVE LEIGHTON PAISNER LLP**
                        200 South Biscayne Blvd., Suite 400
                        Miami, FL 33131
                        Tel: (786) 322-7500
                        Fax: (786) 322-7501

                        By: * /s/ C. Ryan Reetz*
                          C. Ryan Reetz
                          Florida Bar No. 934062
                          ryan.reetz@bclplaw.com
                          Pedro J. Martinez-Fraga
                          Florida Bar No. 752282
                          pedro.martinezfraga@bclplaw.com

                        *Attorneys for Petitioner,*
                        *Alfredo Carlos Pott.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed with the Court's CM/ECF

system, thus effectuating service upon counsel of record and that a copy was further served **<u>by</u>**

**<u>email</u>** upon counsel for subpoena recipient Gonzalo G. Martinez as follows:

> Pedro A. Jedlicka, Esq.
> JEDCA LAW, P.A.
> 1055 Yamato Road, Ste. 107
> Boca Raton, FL 33498
>
> **Email: pjedlicka@jedca.law**

_____
C. Ryan Reetz
